AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means



**FILED**
DISTRICT COURT OF GUAM
APR 09 2021
JEANNE G. QUINATA
CLERK OF COURT

# UNITED STATES DISTRICT COURT
for the

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

2012 Dodge Charger, Gray, Guam License Plate CP5844 (See Attachment A)

Case No. MJ-21-00099

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

2012 Dodge Charger, Gray, Guam License Plate CP5844. Property is further described in Attachment A.

located in the _____ District of ___Guam___, there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 841(a)(1), 843(b) & 846 | Distribution of Methamphetamine |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Richard N. Flores, Special Agent, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___Telephone___ *(specify reliable electronic means)*.

Date: 4/9/21

*Judge's signature*

City and state: Hagatna, Guam

MICHAEL J. BORDALLO, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, RICHARD N. FLORES, being duly sworn, depose and say as follows:

## A. Background of Affiant

1. I am a Special Agent (SA) of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigation (HSI) and have been so employed since January of 2007. I am currently assigned to the Assistant Special Agent in Charge (ASAC) Guam Office. I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C). Prior to HSI, I was employed with the ICE Enforcement and Removal Operations beginning February of 2002. Prior to that, I was assigned to the U.S. Drug Enforcement Administration as a Task Force Officer beginning in January 1999. Prior to that assignment, I was employed by Guam Customs and Quarantine Agency (CQA) as a Customs Officer since April of 1997.

2. I am a graduate of the Criminal Investigator Training Program (CITP) and the ICE Special Agent Training (ICE-SAT) Academy held at the Federal Law Enforcement Training Center in Glynco, Georgia. I have received classroom and on the job training in the areas of general law enforcement, criminal investigative techniques, interviews and interrogations, general and electronic surveillance and criminal law including search and seizure.

3. My duties as a Special Agent with HSI include investigating both criminal and administrative violations of federal laws of Titles 8, 18, 19, 21, 31 and others—specifically including, but not limited to, violations of 21 U.S.C. §§ 841(a)(1) and 846.

4. As a Special Agent with HSI, I have participated in narcotic investigations of criminal violations of the Controlled Substances Act. I have also participated in undercover

1

investigations involving the purchase of controlled substances, assisted in the execution of both state and federal search warrants relating to controlled substances and have conducted numerous surveillances and controlled deliveries in connection with narcotic investigations. The information contained within this affidavit is based upon my personal observations, training, and on information related to me by other law enforcement officers and investigators as set forth more fully herein. Because the purpose of this affidavit is to set forth probable cause, your affiant has not set forth each and every fact known to me in connection with this investigation.

5. I am familiar with the operation of illegal drug trafficking organizations (DTO) in the United States, and DTO with foreign nexus. I know from my training, knowledge and experience that the importers and distributors of controlled substances often utilize the U.S. Postal Service, express freight forwarding cargo companies such as UPS, FEDEX, and DHL Triple B Forwarders to facilitate the distribution of controlled substances. Such express parcels or cargo will come from foreign or domestic places of origin.

6. I have also participated in undercover investigations involving the purchase of controlled substances, assisted in the execution of both state and federal search warrants relating to controlled substances and have conducted numerous surveillances and controlled deliveries in connection with narcotics investigations.

7. I am familiar with the operation of illegal drug trafficking organizations (DTO) in the United States, and DTO with foreign nexus. I know from my training, knowledge and experience that the importers and distributors of controlled substances often utilize the U.S. Postal Service, and express freight forwarding cargo companies such as UPS, and FedEx to

2

facilitate the distribution of controlled substances. Such express parcels will come from foreign or domestic places of origin and will be typically sent by Express, Priority, or First Class Mail.

8. I am aware based on my personal training and experience that criminals often use cellular phones to communicate instructions, plans and intentions to their criminal associates and to report on the progress of their criminal activities, and save the names and telephone numbers of these criminal associates as "contacts" on their cellular telephones or other electronic devices. I am aware that evidence of these instructions, plans, intentions, reports and general discussions of criminal activity are sent or received in the form of text messages, incoming and outgoing call histories or voice messages left in personal voice mail system. I am familiar with the methods in which text messages are sent and received and know that third party phone applications, most commonly referred to as "Apps," are widely used.

9. I am also aware that these new "Apps" allow narcotics traffickers and smugglers to conduct financial transactions on their cellular telephones or other electronic devices via individual financial institution "Apps" to transfer money suspected to be the proceeds from the sale of illegal narcotics from one account to another without ever having to enter a physical location of that financial institution.

10. I am aware that cellular and electronic devices have the capability to store extensive financial records or information to include but not limited to, bank and credit card information, account information and other financial records. This capability allows narcotics traffickers to maintain their anonymity and lessen the likelihood of being discovered by law enforcement personnel.

11. I am aware that cellular and electronic devices have the capability to show and retain information regarding the ownership of the device, when files and additional information was created, edited or deleted, such as logs, registry entries, configuration files, usernames and passwords, documents, browsing history, user profiles, email contacts, "chat and instant messaging logs, photographs and correspondence.

12. The information contained within this affidavit is based upon my personal observations, training, and on information related to me by other law enforcement officers and investigators as set forth more fully herein. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violations of 21 U.S.C. §§ 841(a)(1) and 846 are located within the locations and vehicle described in paragraph 13.

**B.** **Purpose of Affidavit**

13. This affidavit is submitted in support of an application for Search Warrant for a **2012 Dodge Charger; L/P CP5884.** The vehicle is further described in Attachment A. I believe that evidence and instrumentalities, more particularly described in Attachment B, which is attached hereto and incorporated herein, will be found during the search of the vehicle.

**C.** **Relevant Facts pertaining to the Search Warrant for the 2012 Gray Dodge Charger L/P CP5884.**

14. On April 6, 2021, this Honorable Court issued a Search Warrant, MJ-21-00088,

4

for a package addressed to Tina LAY, P.O. Box 11912, Yigo, Guam 96929 (LAY package). Upon execution of the search warrant, approximately 946 grams of a white crystalline substance was discovered inside the LAY package. The substance was subsequently removed from said package and field tested presumptive positive for the presence of methamphetamine.

15. On April 8, 2021, my office, in coordination with other law enforcement agencies, conducted a controlled delivery of the subject package, under law enforcement surveillance, and continued to monitor the package. This was necessary in order to ascertain the identity of the individual who is the true intended recipient of the LAY package. The following actions were taken to implement this controlled delivery:

(a) All suspected methamphetamine was removed from the LAY package and replaced with "sham," and re-wrapped to match its original condition.

(b) Additionally, the same exterior containers and other interior contents inside the LAY package were placed back in the re-wrapped package.

16. After delivering the LAY package, an unknown individual retrieved the subject package from the Contract U.S. Postal Facility at 274 Route 29, Yigo, Guam. That individual was observed wearing a black shirt, black shorts and a motorcycle helmet walking out of the Yigo Postal Facility. The individual was further seen wearing a dark colored backpack that appeared to contain a box shaped item inside the backpack. That individual then drove a white sport motorcycle to a residence on Chalan Chiba, Yigo, Guam. After several minutes, Agents then observed a blue Honda Accord with Guam License Plate number TO833 leave the residence on Chalan Chiba Yigo, Guam. Electronic tracking of the

LAY package led agents to follow the blue Honda Accord to a residence located on Chalan Sergio, Mangilao, Guam. Further tracking of the LAY package led agents to observe a Gray Dodge Charger leave the residence at Chalan Sergio. While the vehicle was stopped waiting to make a left turn onto Route 15, Mangilao Guam, agents observed the Dodge Charger with the front windows rolled down and an unknown male described as having a heavy upper body build as the driver. No other occupants were observed inside the vehicle. The vehicle was then followed to 129B Dairy Road, Mangilao, Guam 96913. Soon after the beeper inside the LAY package activated, alerting agents that the package was opened.

17. Agents approached the residence at 129B Dairy Road and met with Kelly Nick FRANCISCO (FRANCISCO). Agents identified themselves as law enforcement and asked FRANCISCO where is the driver of the gray Dodge Charger that was parked on his driveway. FRANCISCO stated that he just met with Melvin NAPUTI (NAPUTI). NAPUTI asked to use his restroom inside his house. FRANCISCO said that NAPUTI went inside his bathroom and then ran off out of the other side of his house toward Dairy Road. Agents proceeded to search for the driver of the Charger and the LAY package in the area surrounding 129 Dairy Road. Electronic tracking of the LAY package showed a position inside the residence of FRANCISCO at 129B Dairy Road. Agents reapproached FRANCISCO and explained to him that they were trying to locate and recover a U.S. Postal Priority Mail package that was believed to be transported by the gray Dodge Charger. Agents requested consent from FRANCISCO to enter his residence to locate the LAY package. FRANCISCO gave his consent for agents to enter his house. FRANCISCO led the agents inside his residence and directly to his bedroom. Agents observed the LAY package

6

on the floor of FRANCISCO's bedroom. After retrieving the LAY package, agent noticed that the sham and electronic devices were not contained in the package. Agents also observed a black and red backpack placed next to the LAY package.

18. FRANCISCO was subsequently transported to the HSI office in Tamuning and was provided a Statement of Rights form. FRANCISCO waived his rights and consented to an interview with agents. During the interview FRANCISCO stated he saw the gray Dodge Charger arrive at his driveway on his surveillance camera monitor. FRANCISCO said that he went outside and met with NAPUTI and saw NAPUTI step out of the driver side of the vehicle and retrieve a white mail package, later identified as the LAY package from his vehicle and asked FRANCISCO to retrieve NAPUTI's black and red backpack from the front passenger seat. FRANCISCO and NAPUTI then entered his residence with the LAY package and black and red backpack. They proceeded to bring the items into FRANCISO's bedroom at which time FRANCISCO saw NAPUTI open the package and noticed NAPUTI began to panic. FRANCISCO then saw NAPUTI enter the bathroom and quickly exit the bathroom and proceed to climb out of a window from his residence and run out toward Dairy Road, Mangilao.

19. FRANCISCO provided consent to search his residence and was provided a Consent to Search Form for his residence at 129B Dairy Road, Mangilao, Guam. Agents transported FRANCISCO back to 129B Dairy Road, Mangilao, Guam to be present for the search of his residence. During the search of the residence, agents located the "sham" and electronic tracking device inserted inside the fill tank of the bathroom toilet. Agents also found approximately 875 grams of a white crystalline substance discovered inside a red and

7

black backpack located inside FRANCISO's bedroom. The substance was field tested presumptive positive for the presence of methamphetamine. Approximately $24,075 in U.S. currency and drug packaging material was also found inside of the red and black backpack.

19. After completing a search of the residence, agents detained the 2012 Grey Dodge Charger and towed the vehicle to the HSI secured parking area in Tamuning, Guam.

20. On April 9, 2021, while agents were photographing the exterior of the 2012 Grey Dodge Charger, a green plastic bag was visible from outside of the vehicle's front windshield. Visible from inside the green plastic bag are two stacks of U.S. Currency approximately 10 to 12 inches in height. A check with the Guam Revenue and Taxation database indicates that the vehicle is registered to Linda Hocog Cruz.

21. WHEREFORE, based upon the information contained herein, there is probable cause to believe that contained within the **2012 Grey Dodge Charger; L/P CP5884,** contraband, evidence and instrumentalities of criminal offenses against the United States, to wit: violations of 21 U.S.C. §§ 841 (a) (1) and 846 will be found.

FURTHER AFFIANT SAYETH NAUGHT.

RICHARD N. FLORES
Special Agent
Homeland Security Investigations

## ATTACHMENT A

The vehicle is described as a 2012, Dodge Charger, Gray, Guam License Plate CP5844.



9



10



11

## ATTACHMENT B

### ITEMS TO BE SEIZED

1. Controlled substances, in particular, but not limited to, methamphetamine, methamphetamine processing and distribution equipment such as scales, cutting devices cutting materials, and packaging materials.

2. Items of personal property which tend to identify the person(s) in residence, occupancy, control or ownership of the vehicle that is the subject of this warrant, including but not limited to canceled mail, deeds, leases, rental agreements, utility and telephone bills, statements, and identification documents.

3. Cellular phones, ledger books, bank records, telephone records, receipts, airline tickets, drug customer lists, drug paraphernalia, scales, photos and other papers that relate to the importation, transportation, ordering, purchasing and the distribution of controlled substances, U.S. currency, precious metals, jewelry, automobile titles, stereo and electronics equipment and other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting or spending large sums of money acquired and foreign banks documents and/or financial institutions and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts. Paperwork to include, but are not limited to, commercial airlines, commercial, ocean-going vessels, private automobiles, government and contract mail services.

4. Firearms and ammunition.